## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NATIONAL RIFLE ASSOCIATION OF
AMERICA,
11250 Waples Mill Rd.
Fairfax, VA 22030;

FIREARMS POLICY COALITION, INC.
5550 Painted Mirage Road
Suite 320
Las Vegas, NV 89149; *and*

SECOND AMENDMENT FOUNDATION,
12500 NE 10th PL.
Bellevue, WA, 98005;

*Plaintiffs,*

v.

WESTLEY MOORE, in his official capacity
as Governor of Maryland;

ANTHONY G. BROWN, in his official
capacity as Attorney General of the State of
Maryland; *and*

MICHAEL A. JACKSON, in his official
capacity as Acting Superintendent of the
Maryland State Police;

*Defendants.*

Case No.

**COMPLAINT FOR DECLARATORY
AND EQUITABLE RELIEF**

Plaintiffs National Rifle Association of America, Firearms Policy Coalition, Inc., and Second

Amendment Foundation (collectively "Plaintiffs"), complain of Defendant Westley Moore, in his

official capacity as Governor of Maryland, Anthony G. Brown, in his official capacity as Attorney

General of the State of Maryland, and Michael A. Jackson, in his official capacity as Acting

Superintendent of the Maryland State Police, and allege as follows:

**INTRODUCTION**

1.      The Second Amendment to the United States Constitution protects law-abiding citizens' right to possess—and, as a necessary incident to that right, to acquire—firearms that are in common use for lawful purposes. *See District of Columbia v. Heller*, 554 U.S. 570, 627, 629 (2008). This includes handguns, which are "the quintessential self-defense weapon" and "the most popular weapon chosen by Americans for self-defense in the home." *Id.* at 629.

2.      Maryland nonetheless enacted Senate Bill 334 ("SB 334" or "the Bill"), which bans the sale, purchase, or transfer of semiautomatic handguns with a cruciform trigger bar, *see* MD. CODE ANN., CRIM. LAW § 4-305.2, a category that includes nearly every Glock and "Glock-style" pistol on the market.

3.      Maryland appears to have enacted SB 334 out of a concern that Glock and Glock-style pistols can be equipped with pistol converters—devices that enable semiautomatic pistols to function like machineguns. But pistol converters are banned under both federal and Maryland law; it is illegal to modify a Glock or Glock-style pistol using a pistol converter. Those bans are not at issue in this case.

4.      Glock and Glock-style pistols are not relevantly different from any ordinary semiautomatic handgun. That is true even though they may be illegally modified. What is more, these pistols are in common use; indeed, they are among the most popular firearms in the nation. Yet if SB 334 is enforced, ordinary Marylanders will have no way to lawfully acquire these common, constitutionally protected arms.

5.      That is a handgun ban. The fact that the ban targets only one category of popular handguns does not make it constitutional.

6.      Plaintiffs respectfully ask this Court to declare § 4-305.2 unconstitutional and enjoin its enforcement.

## PARTIES

**<u>Plaintiffs</u>**

7.      Plaintiff National Rifle Association of America ("NRA") is a nonprofit membership organization founded in 1871. NRA is America's oldest civil rights organization and foremost defender of Second Amendment rights. It is America's leading provider of firearms marksmanship and safety training for both civilians and law enforcement. NRA has millions of members across the nation, including in Maryland. NRA brings this action on behalf of its members, including those residing in this district, who intend and desire to exercise their Second Amendment rights with respect to handguns banned by SB 334. NRA has members who would buy and/or sell handguns banned by SB 334 on or after January 1, 2027, but for SB 334 and Defendants' enforcement thereof.

8.      Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit membership organization incorporated in Delaware with a primary place of business in Clark County, Nevada. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms, and to protect the means by which individuals may exercise the right to carry and use firearms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside the State of Maryland. FPC brings this action on behalf of its members, including those residing in this district, who intend and desire to exercise their Second Amendment rights with respect to handguns banned by SB 334. FPC has members who would buy

and/or sell handguns banned by SB 334 on or after January 1, 2027, but for SB 334 and Defendants' enforcement thereof.

9. Plaintiff Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated in 1974. SAF's mission is to preserve the individual constitutional right to keep and bear arms through public education, judicial, historical, and economic research, publishing, and legal-action programs focused on the civil right guaranteed by the Second Amendment to the United States Constitution. SAF brings this action on behalf of its members, including those residing in this district, who intend and desire to exercise their Second Amendment rights with respect to handguns banned by § 4-305.2. SAF has members who would buy and/or sell handguns banned by SB 334 on or after January 1, 2027, but for SB 334 and Defendants' enforcement thereof.

**Defendants**

10. Defendant Westley Moore is the Governor of Maryland and is sued herein in his official capacity. The Governor is head of Maryland's executive branch and is responsible for the enforcement of state laws and regulations issued by state regulatory agencies. The Governor may direct the Attorney General to undertake criminal investigations and prosecutions for violations of state law, including SB 334. *See* MD. CONST. art V, § 3; *In re Crim. Investigation No. CID 18-2673 in Cir. Ct. for Balt. City*, Nos. 4, 5, 6, 2026 WL 1130070, at *9 (Md. Apr. 27, 2026).

11. Defendant Anthony G. Brown is the Attorney General of the State of Maryland and is sued herein in his official capacity. The Attorney General is head of the State's Office of the Attorney General. MD. CODE ANN., STATE GOV'T § 6-104. The Attorney General holds statewide criminal jurisdiction to investigate and prosecute any indictable offense, including alleged violations of SB 334, upon request of the Governor or the General Assembly. MD. CONST. art. V, § 3.

12.     Defendant Michael A. Jackson is the Secretary of the Maryland Department of State Police and is sued herein in his official capacity. The Secretary of the Department of State Police "supervise[s] and direct[s] the affairs and operations of the Department." MD. CODE ANN., PUB. SAFETY § 2-202(e)(1). The Department "enforce[s] the laws and ordinances of the State, counties, and municipal corporations" and "administer[s] the laws that relate to the sales of pistols and revolvers." MD. CODE ANN., PUB. SAFETY §§ 2-301(a)(2)(iii), (b)(1)(i). The Department "shall adopt regulations to implement [SB 334], including publishing a list of prohibited machine gun convertible pistols." MD. CODE ANN., CRIM. LAW § 4–305.2(b).

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs' claims arise under 42 U.S.C. § 1983 and seek redress for the deprivation, under color of state law, of rights secured by the Second Amendment to the United States Constitution.

14.     Venue is proper under 28 U.S.C. § 1391(b) because all Defendants reside in the State of Maryland and § 4-305.2 will restrict Plaintiffs' members from acquiring and selling covered firearms in this district.

## GENERAL ALLEGATIONS

15.     Plaintiffs bring this action to challenge Senate Bill 334 ("SB 334" or "the Bill"), which was signed into law by the Governor on May 26, 2026.

### Background

16.     SB 334 amends the Maryland Code of Criminal Law to provide that, "on or after January 1, 2027, a person may not manufacture, sell, offer for sale, purchase, receive, or transfer a machine gun convertible pistol." MD. CODE ANN., CRIM. LAW § 4-305.2(a). SB 334 directs the Maryland State Police to adopt regulations to implement this provision, "including publishing a list

of prohibited machine gun convertible pistols." *Id*. § 4-305.2(b). A first offense is punishable by "imprisonment not exceeding 3 years or a fine not exceeding $5,000 or both." *Id*. § 4-306(a).

17.    This broad ban applies to every sale, purchase, or transfer that does not fall into one of a few specific, narrow categories, which primarily relate to law enforcement personnel. *See id*. § 4-302.

18.    A "machine gun convertible pistol" is defined as "any semiautomatic pistol with a cruciform trigger bar that can be readily converted by hand or by using common household tools into a machine gun by the installation or attachment of a pistol converter as a replacement for the slide's backplate." *Id*. § 4-301(o)(1). This definition applies "regardless of whether a tab or other piece of material is located on the rear portion of the pistol frame to block the attachment of a pistol converter, if the tab or other piece of material can be readily removed with a common household tool." *Id*. 4-301(o)(2). This definition "does not include a hammer–fired semiautomatic pistol or a striker–fired semiautomatic pistol without a cruciform trigger bar." *Id*. at 4-301(o)(3).

19.    A "cruciform trigger bar" is defined as "a component in a semiautomatic pistol that: (1) serves as a link between the trigger and the firing pin; [and] (2) has its sear incorporated into a cross–shaped surface." *Id*. at 4-301(j).

20.    A "pistol converter" is defined as "any device or instrument that, when installed in or attached to the rear of the slide of a semiautomatic pistol, replaces the backplate and interferes with the trigger mechanism, which enables the pistol to shoot automatically more than one shot by a single function of the trigger." *Id*. at 4-301(p)(1). Put differently, a pistol converter is a device that enables a pistol to function as a machinegun.

21.     A "common household tool" is defined to include "a screwdriver, a pipe wrench, pliers, a hacksaw, a crowbar, an electric drill, a rotary tool, a hammer, a chisel, a file, and a crescent wrench." *Id.* 4-301(h).

22.     Pistol converters are banned under both federal and Maryland law.

23.     Under federal law, the definition of "machinegun" includes pistol converters. *See* 26 U.S.C. § 5845(b). With exceptions not relevant here, federal law prohibits the possession, manufacture, transfer, or receipt of a machinegun. *See* 28 U.S.C. § 922(o); 26 U.S.C. § 5861. A violation of these provisions is a felony punishable by up to ten years' imprisonment and a fine of up to $250,000. *See* 18 U.S.C. § 924(a)(2); 26 U.S.C. § 5871; 18 U.S.C. § 3571.

24.     Under Maryland law, the definition of "rapid fire activator" includes pistol converters. *See* MD. CODE ANN., CRIM. LAW § 4-301(m). With exceptions not relevant here, Maryland law prohibits the manufacture, possession, sale, transfer, or purchase of a rapid fire activator. *Id*. § 4-305.1(a)(2). A violation of these provisions is a misdemeanor punishable by up to three years' imprisonment and a fine of up to $5,000. *Id*. § 4-306(a).

25.     Nearly every model of Glock and Glock-style pistol can be modified with a pistol converter to fire automatically. Neither Glock nor any manufacturer of Glock-style pistols makes pistol converters, which, as explained, are illegal under federal and Maryland law.

26.     The federal and state prohibitions on pistol converters are not at issue in this case. This case is about whether Maryland may ban Glock and Glock-style handguns consistent with the United States Constitution merely because someone *can* convert those firearms into something that they are not.

**SB 334 is a Ban on Glock and Glock-Style Pistols**

27.    All factory stock models of Glock pistols have a cruciform trigger bar. This includes Glock's "Gen 6" and "V series" pistols, which were introduced into the U.S. market in late 2025. The cruciform trigger bar is integral to Glock's design. Among other things, it ensures that a Glock pistol will not discharge accidentally if dropped.

28.    The cruciform trigger bar was present in Glock's patented design by 1982. *See* Frank Koppenhagen et al., *The Genesis of the Glock Pistol: How Gaston Glock Created the Dominant Design for Handguns* (May 22, 2025), https://perma.cc/R63R-AY6C (describing a 1982 Glock patent and noting the trigger bar had a "cruciform shape"). It has thus been a feature of Glock pistols since they were first sold in the U.S. in 1986. *See The Glock Story,* GLOCK, https://perma.cc/N92H-UXVG.

29.    When Glock's Gen 3 patent expired in 2020, many companies began producing handguns based on its exceedingly popular design. These pistols are often referred to as Glock-style pistols. Common models include the Palmetto State Armory Dagger, the Ruger RXM, and many Shadow Systems handguns. Factory stock versions of these Glock-style pistols are also designed with a cruciform trigger bar.

30.    Because factory stock Glock and Glock-style pistols have a cruciform trigger bar, they satisfy SB 334's definition of "machine gun convertible pistol" if they are deemed to be "readily convert[ible]" into a machine gun as described in § 4-301(o)(1). There is a substantial likelihood that virtually all Glock and Glock-style pistols will be deemed to qualify as "readily convert[ible]."

31.    To the best of Plaintiffs' knowledge, the Glock and Glock-style pistols just discussed are the only handguns that meet SB 334's definition of a "machine gun convertible pistol." Section 4-305.2(a) functions as a ban on the sale, purchase, or transfer of these Glock and Glock-style pistols by ordinary citizens in the State of Maryland.

32.     With exceptions not relevant here, federal law prohibits a person from transferring a handgun purchased or otherwise obtained outside his State of residence into that State. *See* 18 U.S.C. § 922(a)(3). That means ordinary Marylanders are not permitted to purchase or otherwise obtain a Glock or Glock-style pistol in any other State.

33.     Section 4-305.2(a) therefore bans ordinary Marylanders from acquiring Glock and Glock-style pistols.

**The Second Amendment**

34.     The Second Amendment protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II. The Fourteenth Amendment incorporates this fundamental right against the States. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

35.     A law that forbids conduct covered by the Second Amendment's "plain text" is presumptively unconstitutional and can be enforced only if the government "demonstrat[es] that it is consistent with the Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022).

36.     The Second Amendment's plain text covers "all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582. And it encompasses the right to acquire these firearms. *See Reese v. ATF*, 127 F.4th 583, 590 (5th Cir. 2025) ("[T]he right to 'keep and bear arms' surely implies the right to purchase them." (citation omitted)); *see also, e.g.*, *Ortega v. Grisham,* 148 F.4th 1134, 1143 (10th Cir. 2025); *United States v. Knipp*, 138 F.4th 429, 434 (6th Cir. 2025); *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 118 (9th Cir. 2024); *Gazzola v. Hochul*, 88 F.4th 186, 196 (2d Cir. 2023).

37.     A ban on the sale or purchase of a bearable arm therefore implicates the Second Amendment's plain text.

38.     *Heller* makes clear the *only* historical justification for banning a firearm is that the arm is both "dangerous and unusual." 554 U.S. at 627 (citation omitted). Arms that are "in common use" are by definition neither. *Id*. (citation omitted). The Second Amendment thus "protects the possession and use of weapons that are 'in common use at the time.'" *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 627).

39.     A law that bans the sale or purchase of a weapon in common use violates the Second Amendment.

**Glock and Glock-Style Pistols Are in Common Use**

40.     *Heller* held that handguns are in common use and therefore cannot be banned. *See Heller*, 554 U.S. at 629 ("handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid"). "[T]he vast majority of [handguns] … are semi-automatic." *Heller v. District of Columbia*, 670 F.3d 1244, 1269 (D.C. Cir. 2011) (Kavanaugh, J., dissenting); *see 2021 Firearms Retailer: Survey Report*, NSSF, at 9 (2021), https://perma.cc/N59Q-6UJJ (over 80% of handguns sold in the United States in 2020 were semi-automatic pistols); *Firearm Production in the United States*, NSSF, at 2 (2023), https://perma.cc/P6A8-DZK2 (over 80% of handguns produced in the United States between 1991 and 2021 were semiautomatic pistols).

41.     Glock and Glock-style pistols are semiautomatic pistols. They are not relevantly different from *any* other type of semiautomatic pistol. Glock and Glock-style pistols are therefore in common use.

42.     Even considered apart from other semiautomatic handguns, Glock and Glock-style pistols are "in common use" by any measure. Indeed, they are among the most popular handguns

in the nation. *See How Glock Became America's Gun*, CBS NEWS (Sep. 15, 2013), https://perma.cc/J5E8-42UA.

43.     Analysts estimate that, as of 2020, Glock held nearly 65% of the U.S. market for handguns. *Gaston Glock & family*, FORBES (Apr. 5, 2021), https://perma.cc/6HWX-6FFP.

44.     The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") has recognized that Glocks are "popular for civilian use." *See Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24652, 24655 (Apr. 26, 2022). And Glock pistols consistently rank among the top-selling firearms in the U.S. civilian market. *See, e.g.*, *Best-Selling Guns*, GUNS.COM (May 5, 2026), https://perma.cc/9JGJ-ZXXN (listing two Glock models in the top-five-selling handguns).

45.     Glock pistols also are widely used by law enforcement officers in the United States, *see* Kyle Clouse, *Is Glock Still the King of Semi-auto Pistols?*, LIBERTY SAFE (June 13, 2025), https://perma.cc/84HV-PTTZ ("[B]etween 40% and 65% of US law enforcement agencies … provide or specify Glock pistols for their officers."); *Glock History*, GLOCK, https://perma.cc/CLZ5-9ATE ("Over 65% of federal, state and local agencies in the United States have been issued GLOCK pistols."), including in Maryland, *see New Technology Initiatives*, BALT. POLICE DEP'T (Last Updated May 5, 2026), https://perma.cc/38AU-6V8V (noting that the Baltimore Police Department has issued Glock pistols to its officers). This is noteworthy because police officers on the beat carry firearms for defensive use, just like other citizens.

46.     Government data confirms the popularity of Glock handguns. For example, in 2021, Glock manufactured 581,944 handguns in the United States. *See Annual Firearms Manufacturing and Export Report*, ATF, at 13 (2021), https://perma.cc/T6FB-YCAY. Of those, just

11

67,106 were exported. *Id*. at 152. Thus, in 2021 alone, Glock manufactured 514,838 handguns for sale in the United States.

47.     That is to say nothing of imports. In 2021, 5,263,341 handguns were imported into the United States. *See Firearms Commerce in the United States*, ATF, at 3 (2024), https://perma.cc/P689-LX24. Of those, 1,688,941 were imported from Austria, *id*. at 5, where many Glocks are manufactured, *see Glock Brand*, GLOCK, https://perma.cc/2UWY-EARR. This suggests that, in 2021 alone, Glock imported hundreds of thousands of handguns for sale in the United States.

48.     Glock and Glock-style pistols are generally lawful to sell, acquire, and possess in the vast majority of the States.

## CLAIMS FOR RELIEF

## COUNT ONE: VIOLATION OF THE SECOND AND FOURTEENTH AMENDMENTS

### (42 U.S.C. § 1983, *Ex parte Young*, 209 U.S. 123 (1908))

49.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 48.

50.     Section 4-305.2(a) bans the sale or purchase of Glock and Glock-style pistols. These handguns, like all handguns, are "arms" within the scope of the plain text of the Second Amendment. And there is no history of regulation that justifies the ban. Indeed, because the handguns banned by Maryland are in common use, under *Heller*, they cannot be banned.

51.      Section 4-305.2(a) therefore violates the Second Amendment. Defendants' enforcement of § 4-305.2(a) deprives Plaintiffs' members of rights secured by the Constitution.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs respectfully request that this Court:

1.      Declare that § 4-305.2(a) is unconstitutional under the Second Amendment, both facially and as-applied;

2.      Enjoin enforcement of § 4-305.2(a), including any regulations adopted to implement § 4-305.2(a);

3.      Award Plaintiffs the costs of this action and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

4.      Award Plaintiffs other legal and equitable relief as is just and appropriate.

Dated: May 26, 2026                              Respectfully submitted,

/s/ *Nicole J. Moss*
Nicole J. Moss, Bar No. 20222
    *Attorney of Record*
David H. Thompson*
Peter A. Patterson*
William V. Bergstrom*
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 220-9600
(202) 220-9601
nmoss@cooperkirk.com

*Pro hac vice* application forthcoming

*Attorneys for Plaintiffs*