**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DAVID J. BATHRAS, SR. *et al.*,

*Plaintiffs*,

Case No. 1:26-cv-02074-JRR

WESTLEY MOORE, in his official capacity as Governor of Maryland, *et al.*,

*Defendants.*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .... ii

INTRODUCTION .... 1

STATEMENT OF FACTS .... 1

I. MARYLAND'S UNCONSTITUTIONAL BAN .... 1

A. SB 334 Bans Common Handguns .... 1

II. THE PLAINTIFFS .... 5

ARGUMENT .... 8

I. STANDARD FOR A PRELIMINARY INJUNCTION .... 8

II. SB 334 LIKELY VIOLATES PLAINTIFFS' SECOND AMENDMENT RIGHTS .... 8

A. Second Amendment and the two-part *Bruen* test .... 8

B. SB 334 bans the acquisition of "Arms." .... 9

C. The State cannot meet its burden of showing the ban is consistent with historical tradition, as Glock pistols are in "common use." .... 10

III. DENIAL OF THIS CONSTITUIONAL RIGHT CAUSES IRREPERABLE HARM. .... 16

IV. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH TOWARDS A PRELIMINARY INJUNCTION. .... 17

CONCLUSION .... 18

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Ass'n of Cmty. Cancer Ctrs. v. Azar*,
509 F. Supp. 3d 482 (D. Md. 2020) ........ 17

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*,
Nos. 24-2415, 24-2450 & 24-2506, 2026 WL 2075513 (3d Cir. July 17, 2026) ........ 10, 12

*B&L Prods., Inc. v. Newsom*,
104 F.4th 108 (9th Cir. 2024) ........ 10

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023) ........ 17

*Bianchi v. Brown*,
111 F.4th 438 (4th Cir. 2024) ........ 13, 14, 15

*Bondi v. VanDerStok*,
604 U.S. 458 (2025) ........ 16

*Caetano v. Massachusetts*,
577 U.S. 411 (2016) ........ 12

*D.N.N. v. Liggins*,
822 F. Supp. 3d 543 (D. Md. 2026) ........ 18

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ........ 1, 9, 10, 11, 15, 16, 17

*Friedman v. City of Highland Park*,
577 U.S. 1039 (2015) ........ 12

*Gazzola v. Hochul*,
88 F.4th 186 (2d Cir. 2023) ........ 10

*Giovani Carandola, Ltd. v. Bason*,
303 F.3d 507 (4th Cir. 2002) ........ 18

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011) ........ 11

*Kipke v. Moore*,
695 F.Supp.3d 638 (D. Md. 2023) ........ 17

*Leaders of a Beautiful Struggle v. Balt. Police Dep't*,
2 F.4th 330 (4th Cir. 2021) ........ 18

*McCoy v. ATF*,
140 F.4th 568 (4th Cir. 2025) ........ 10, 11

*McDonald v. City of Chicago*,
561 U.S. 742 (2010) ........ 8, 11, 17

*Miranda v. Garland*,
34 F.4th 338 (4th Cir. 2022) .......... 16, 17

*New York State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) .......... 9, 11

*Ortega v. Grisham*,
148 F.4th 1134 (10th Cir. 2025) .......... 10

*Reese v. ATF*,
127 F.4th 583 (5th Cir. 2025) .......... 10

*Ross v. Meese*,
818 F.2d 1132 (4th Cir. 1987) .......... 16

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos,*
605 U.S. 280 (2025) .......... 12

*Snope v. Brown*,
145 S. Ct. 1534 (2025) .......... 12, 13

*Staples v. United States*,
511 U.S. 600 (1994) .......... 12, 16

*United States v. Knipp*,
138 F.4th 429 (6th Cir. 2025) .......... 10

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 8

*Wolford v. Lopez*,
609 U.S.___, 2026 WL 1825723 (June 25, 2026) .......... 9, 10, 11

**Statutes**

18 U.S.C.
§ 922(a)(3) .......... 5
§ 922(o) .......... 3
§ 924(a)(2) .......... 3
§ 3571 .......... 3

26 U.S.C.
§ 5845(b) .......... 2
§ 5861 .......... 3
§ 5871 .......... 3

MD. CODE ANN., CRIM. LAW
§ 4-301(J) .......... 2
§ 4-301(M)(3) .......... 2
§ 4-301(O)(1) .......... 2, 4
§ 4-301(O)(2) .......... 2
§ 4-301(P)(1) .......... 2
§ 4-301(Q) .......... 3
§ 4-302 .......... 2

§ 4-302(5)....5
§ 4-302(6)....5
§ 4-305.1(a)(2)....3
§ 4-305.2....1
§ 4-305.2(A)....1
§ 4-305.2(b)....1, 2
§ 4-306(a)....2, 3

U.S. CONST. amend. II....8

**Other Authorities**

1884 Vt. Acts & Resolves 74, An Act Relating to Traps, § 1....15

*Annual Firearms Manufacturing and Export Report*, ATF (2021), https://perma.cc/T6FB-YCAY....14

*Best-Selling Guns*, GUNS.COM (May 5, 2026), https://perma.cc/9JGJ-ZXXN....13

Kyle Clouse, *Is Glock Still the King of Semi-auto Pistols?*, LIBERTY SAFE (June 13, 2025), https://perma.cc/84HV-PTTZ....13

Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652 (Apr. 26, 2022)....13

*Firearm Production in the United States: With Firearm Import and Export Data,* NSSF (2023), https://perma.cc/P6A8-DZK2....11, 12

*Firearms Commerce in the United States: Statistical Update 2024*, ATF (2024), https://perma.cc/P689-LX24....14

*Firearms Retailer: Survey Report*, NSSF (2021), https://perma.cc/N59Q-6UJJ....11

*Gaston Glock & family*, FORBES (Apr. 5, 2021), https://perma.cc/6HWX-6FFP....13

*Glock Brand*, GLOCK, https://perma.cc/2UWY-EARR....14

*Glock History*, GLOCK, https://perma.cc/CLZ5-9ATE....13

*How Glock Became America's Gun*, CBS NEWS (Sep. 15, 2013), https://perma.cc/J5E8-42UA....13

Frank Koppenhagen et al., *The Genesis of the Glock Pistol: How Gaston Glock Created the Dominant Design for Handguns* (May 22, 2025), https://perma.cc/R63R-AY6C....3

Frank Miniter, *The Truth About Bans on Glocks*, AM. RIFLEMAN (June 11, 2026), https://perma.cc/7CKV-A4SD....13

*MR920 Model Series,* SHADOW SYSTEMS, https://perma.cc/3HS3-MBNV....4

*New Technology Initiatives*, BALT. POLICE DEP'T (Last Updated May 5, 2026), https://perma.cc/38AU-6V8V....13

*PSA Dagger 9MM Pistols, Parts & Accessories for Sale*, PALMETTO STATE ARMORY, https://perma.cc/WB2C-NL7M....4

*RXM,* RUGER, https://perma.cc/GW5P-MZ8Q....4

*Shotgun*, BRITANNICA (June 19, 2026), https://perma.cc/AR2N-CXA8........................................15

Mark W. Smith, *What Part of "In Common Use" Don't You Understand?: How Courts Have Defied Heller In Arms-Ban-Cases—Again*, PER CURIAM HARV. J.L. & PUB. POL'Y (Sep. 27, 2023), https://perma.cc/N6LY-3EMQ.................................................................10, 11

*The Glock Story*, GLOCK, https://perma.cc/N92H-UXVG...............................................................4

## INTRODUCTION

The Second Amendment to the United States Constitution protects law-abiding citizens' right to possess and, necessarily, to acquire firearms that are in common use for lawful purposes. *See District of Columbia v. Heller*, 554 U.S. 570, 627, 629 (2008). This includes handguns, which are "the quintessential self-defense weapon." *Id*. at 629. Maryland nonetheless enacted Senate Bill 334 ("SB 334" or "the Bill"), which bans the sale, purchase, or transfer of semiautomatic handguns with a cruciform trigger bar, *see* MD. CODE ANN., CRIM. LAW § 4-305.2, a category that includes nearly every Glock and "Glock-style" pistol on the market. As handguns, these arms are clearly protected by the Second Amendment as articulated in *Heller*, and SB 334 is flatly unconstitutional under settled law. But even if they are treated as a discrete subset of handguns, which they should not be, the pistols banned by Maryland are *still* in common use; indeed, they are among the most popular firearms in the nation. Yet if SB 334 is enforced, ordinary Marylanders will have no way to lawfully acquire these common, constitutionally protected arms. Plaintiffs respectfully ask this Court to declare § 4-305.2 unconstitutional and preliminarily enjoin its enforcement.

## STATEMENT OF FACTS

### I. MARYLAND'S UNCONSTITUTIONAL BAN

#### A. SB 334 Bans Common Handguns

The Governor signed SB 334 into law on May 26, 2026. SB 334 amends the Maryland Code of Criminal Law to provide that, "on or after January 1, 2027, a person may not manufacture, sell, offer for sale, purchase, receive, or transfer a machine gun convertible pistol." MD. CODE ANN., CRIM. LAW § 4-305.2(A) (effective Jan. 1, 2027). SB 334 directs the Maryland State Police to adopt regulations to implement this provision, "including publishing a list of prohibited machine

gun convertible pistols." *Id.* § 4-305.2(b). A first offense is punishable by "imprisonment not exceeding 3 years or a fine not exceeding $5,000 or both." *Id.* § 4-306(a).

This ban applies to every sale, purchase, or transfer that does not fall into one of a few specific, narrow categories, which primarily relate to law enforcement personnel. *See id.* § 4-302.

The following definitions, provided by SB 334, reveal its broad scope. A "machine gun convertible pistol" is defined as "any semiautomatic pistol with a cruciform trigger bar that can be readily converted by hand or by using common household tools into a machine gun by the installation or attachment of a pistol converter as a replacement for the slide's backplate." *Id.* § 4-301(O)(1). This definition applies "regardless of whether a tab or other piece of material is located on the rear portion of the pistol frame to block the attachment of a pistol converter, if the tab or other piece of material can be readily removed with a common household tool." *Id.* § 4-301(O)(2). This definition "does not include a hammer–fired semiautomatic pistol or a striker–fired semiautomatic pistol without a cruciform trigger bar." *Id.* § 4-301(M)(3).

A "cruciform trigger bar" is defined as "a component in a semiautomatic pistol that: (1) serves as a link between the trigger and the firing pin; and (2) has its sear incorporated into a cross–shaped surface." *Id.* § 4-301(J).

A "pistol converter" is defined as "any device or instrument that, when installed in or attached to the rear of the slide of a semiautomatic pistol, replaces the backplate and interferes with the trigger mechanism, which enables the pistol to shoot automatically more than one shot by a single function of the trigger." *Id.* § 4-301(P)(1). Put differently, a pistol converter is a device that enables a pistol to function as a machinegun.

Pistol converters are already banned under both federal and Maryland law. Under federal law, the definition of "machinegun" includes pistol converters. *See* 26 U.S.C. § 5845(b). With

exceptions not relevant here, federal law prohibits the possession, manufacture, transfer, or receipt of a machinegun. *See* 18 U.S.C. § 922(o); 26 U.S.C. § 5861. A violation of these provisions is a felony punishable by up to ten years' imprisonment and a fine of up to $250,000. *See* 18 U.S.C. § 924(a)(2); 26 U.S.C. § 5871; 18 U.S.C. § 3571. Under Maryland law, the definition of "rapid fire activator" includes pistol converters. *See* MD. CODE ANN., CRIM. LAW § 4-301(Q). With exceptions not relevant here, Maryland law prohibits the manufacture, possession, sale, transfer, or purchase of a rapid fire activator. *Id*. § 4-305.1(a)(2). A violation of these provisions is a misdemeanor punishable by up to three years imprisonment and a fine of up to $5,000. *Id*. § 4-306(a).

Nearly every model of Glock and Glock-style pistol can be modified with a pistol converter to fire automatically.

The federal and state prohibitions on pistol converters are not at issue in this case. This case is about whether Maryland may ban Glock and Glock-style handguns consistent with the United States Constitution merely because someone can convert those firearms into something that they are not.

All factory stock models of Glock pistols have a cruciform trigger bar. This includes Glock's "Gen 6" and "V series" pistols, which were introduced into the U.S. market in late 2025. The cruciform trigger bar is integral to Glock's design. Among other things, it ensures that a Glock pistol will not discharge accidentally if dropped.

The cruciform trigger bar was present in Glock's patented design by 1982. *See* Frank Koppenhagen et al., *The Genesis of the Glock Pistol: How Gaston Glock Created the Dominant Design for Handguns* (May 22, 2025), https://perma.cc/R63R-AY6C (describing a 1982 Glock patent and noting the trigger bar had a "cruciform shape"). It has thus been a feature of Glock

pistols since they were first sold in the U.S. in 1986. *See The Glock Story*, GLOCK, https://perma.cc/N92H-UXVG.

When Glock's "Gen 3" patent expired in 2020, many companies began producing handguns based on its exceedingly popular design. These pistols are often referred to as Glock-style pistols. Common models include the Palmetto State Armory Dagger, *PSA Dagger 9MM Pistols, Parts & Accessories for Sale*, PALMETTO STATE ARMORY, https://perma.cc/WB2C-NL7M, the Ruger RXM, *RXM,* RUGER, https://perma.cc/GW5P-MZ8Q, and many Shadow Systems handguns, *see, e.g.*, Shadow Systems MR920 Model Series, *MR920 Model Series,* SHADOW SYSTEMS, https://perma.cc/3HS3-MBNV. Factory stock versions of these Glock-style pistols are also designed with a cruciform trigger bar.

Because factory stock Glock and Glock-style pistols have a cruciform trigger bar, they satisfy SB 334's definition of "machine gun convertible pistol" if they are deemed to be "readily convert[ible]" into a machine gun. MD. CODE ANN., CRIM. LAW § 4-301(O)(1). There is a substantial likelihood that virtually all Glock and Glock-style pistols will be deemed to qualify as "readily convert[ible]." *Id*. To be clear, while Plaintiffs refer to these arms as "Glock and Glock-style pistols," Plaintiffs challenge Maryland's ban in its entirety as to *all* handguns with a cruciform trigger bar. Any reference or discussion focused on "Glock and Glock-style pistols" is merely for the convenience of discussion, but there is no material distinction between handguns with cruciform trigger bars and this Court's decision should encompass any and all of those arms.

To the best of Plaintiffs' knowledge, the Glock and Glock-style pistols discussed are the only handguns that meet SB 334's definition of a "machine gun convertible pistol." Section 4-305.2(a) functions as a ban on the sale, purchase, or transfer of these Glock and Glock-style pistols by ordinary citizens in the State of Maryland.

With exceptions not relevant here, federal law prohibits a person from transferring a handgun purchased or otherwise obtained outside his State of residence into that State. *See* 18 U.S.C. § 922(a)(3). That means ordinary Marylanders are not permitted to purchase or otherwise obtain a Glock or Glock-style pistol in any other State. And Maryland's ban does not permit even private sales in state except for transfers to immediate family members of previously owned firearms. *See* MD. CODE ANN., CRIM. LAW §§ 4-302(5), (6). Section 4-305.2(A) therefore bans ordinary Marylanders from acquiring Glock and Glock-style pistols.

## II. THE PLAINTIFFS

Plaintiff David J. Bathras, Sr., is a law-abiding adult citizen of the United States and a resident of Maryland. Bathras Decl. ¶ 1. He is eligible under federal and Maryland law to possess, acquire, purchase, and receive firearms, including handguns. *Id.* ¶ 2. He is also a registered gun collector in Maryland. *Id.* ¶ 3. Plaintiff Bathras currently owns a Glock semiautomatic pistol that he lawfully acquired and possesses for lawful purposes, including self-defense, training, recreational shooting, and collection. *Id.* ¶ 4. But for SB 334 Plaintiff Bathras would retain the full incidents of lawful ownership of his Glock pistol, including the ability to sell, transfer, trade, or otherwise dispose of it through lawful channels if he chooses to do so. *Id.* ¶ 5. The ban will substantially impair the value and alienability of his lawfully acquired property by prohibiting him from selling or transferring his Glock pistol in Maryland after the ban becomes operative. In addition, but for the ban, Plaintiff Bathras would acquire additional Glock and Glock-style semiautomatic pistols in the future for lawful purposes, including self-defense, recreational shooting, training, and collection. *Id.* ¶ 6. The challenged law prevents him from doing so and forces him to forgo the acquisition of arms he wishes to keep and bear, or else risk criminal prosecution and other adverse legal consequences. Plaintiff Bathras is a member of Plaintiffs

National Rifle Association ("NRA"), Firearms Policy Coalition ("FPC"), and Second Amendment Foundation ("SAF"). *Id.* ¶ 7.

Plaintiff Roslyn Mickens is a law-abiding adult citizen of the United States and a resident of Maryland. Mickens Decl. ¶ 1. She is eligible under federal and Maryland law to possess, acquire, purchase, and receive firearms, including handguns. *Id.* ¶ 2. She is also a registered gun collector in Maryland and a licensed firearms instructor. *Id.* ¶ 3. But for the ban, Plaintiff Mickens would acquire Glock and Glock-style semiautomatic pistols in the future for lawful purposes, including self-defense, recreational shooting, training, and collection. *Id.* ¶ 4. The challenged law prevents her from doing so and forces her to forgo the acquisition of arms she wishes to keep and bear, or else risk criminal prosecution and other adverse legal consequences. Plaintiff Mickens is a member of Plaintiffs NRA, FPC, and SAF. *Id.* ¶ 5.

Plaintiff Atlantic Guns, Inc. ("Atlantic Guns") is a federally licensed firearms dealer established in 1950 and located in Rockville, Maryland. Schneider Decl. ¶ 2. Atlantic Guns is licensed under federal law to engage in the business of selling firearms at retail and is also licensed under Maryland law to sell regulated firearms, including handguns, to law-abiding Maryland residents who satisfy all applicable federal and state requirements. *Id.* ¶ 3. In the ordinary course of its business, Atlantic Guns sells, offers for sale, receives, transfers, and maintains inventory of semiautomatic handguns, including Glock pistols and other Glock-style pistols that are commonly possessed and used by law-abiding citizens for lawful purposes, including self-defense in the home. *Id.* ¶ 4. But for SB 334, Atlantic Guns would continue to acquire, stock, advertise, offer for sale, sell, and transfer such pistols to qualified customers in Maryland. *Id.* ¶ 5. The ban will force Atlantic Guns to cease selling and offering for sale a substantial category of popular, constitutionally protected handguns; will deprive Atlantic Guns of sales, customer traffic,

goodwill, and related revenue; and will prevent Atlantic Guns from assisting its customers in acquiring arms they are entitled to keep and bear. Atlantic Guns faces a credible threat of enforcement, including criminal penalties and adverse licensing consequences, if it continues to sell, offer for sale, receive, or transfer covered pistols after the ban becomes operative. Atlantic Guns is a member of Plaintiffs NRA, FPC, and SAF. *Id.* ¶ 7.

Plaintiff National Rifle Association of America is a nonprofit membership organization founded in 1871. NRA is America's oldest civil rights organization and America's leading provider of firearms marksmanship and safety training for both civilians and law enforcement. Commerford Decl. ¶ 2. NRA has millions of members across the nation, including in Maryland. *Id.* ¶ 3. NRA brings this action on behalf of its members, including those residing in this district, who intend and desire to exercise their Second Amendment rights to purchase handguns banned by SB 334. *Id.* ¶ 4. NRA has members who would buy and/or sell handguns banned by SB 334 on or after January 1, 2027, but for SB 334 and Defendants' enforcement thereof. *Id.* ¶ 5.

Plaintiff Firearms Policy Coalition, Inc. is a nonprofit membership organization incorporated in Delaware with a primary place of business in Clark County, Nevada. Combs Decl. ¶ 2. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. *Id.* ¶ 3. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms, and to protect the means by which individuals may exercise the right to carry and use firearms. *Id.* ¶ 4. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. *Id.* ¶ 5. FPC's members reside both within and outside the State of Maryland. *Id.* ¶ 6. FPC brings this action on behalf of its members, including those residing in this

district, who intend and desire to exercise their Second Amendment protected rights to purchase handguns banned by SB 334. *Id.* ¶ 7. FPC has members, including but not limited to the named Plaintiffs herein, who would buy and/or sell handguns banned by SB 334 on or after January 1, 2027, but for SB 334 and Defendants' enforcement thereof. *Id.* ¶ 8.

Plaintiff Second Amendment Foundation is a nonprofit educational foundation incorporated in 1974. Sack Decl. ¶ 2. SAF's mission is to preserve the individual constitutional right to keep and bear arms through public education, judicial, historical, and economic research, publishing, and legal-action programs focused on the civil right guaranteed by the Second Amendment to the United States Constitution. *Id.* ¶ 2. SAF brings this action on behalf of its members, including those residing in this district, who intend and desire to exercise their Second Amendment rights to purchase handguns banned by § 4-305.2. *Id.* ¶ 3. SAF has members who would buy and/or sell handguns banned by SB 334 on or after January 1, 2027, but for SB 334 and Defendants' enforcement thereof. *Id.* ¶ 4.

## ARGUMENT

### I. STANDARD FOR A PRELIMINARY INJUNCTION

For a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm without preliminary relief, (3) that the balance of equities tips towards the plaintiff, and (4) that the injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, all four elements are satisfied.

### II. SB 334 LIKELY VIOLATES PLAINTIFFS' SECOND AMENDMENT RIGHTS

#### A. Second Amendment and the two-part *Bruen* test

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II. The Fourteenth Amendment incorporates this fundamental right against the States. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). A law that forbids conduct covered by the Second

Amendment's "plain text" is presumptively unconstitutional and can be enforced only if the government "demonstrat[es] that it is consistent with the Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). First, based on the plain text, SB 334 falls within the Second Amendment's purview. Second, SB 334 is a historical outlier and the State cannot show it is consistent with historical tradition, as handguns generally, and Glock and Glock-style pistols specifically, are in common use for lawful purposes. SB 334 therefore violates the Second Amendment.

**B. SB 334 bans the acquisition of "Arms."**

At *Bruen*'s first step, the only question before this Court is whether SB 334 restricts conduct covered by the Second Amendment's "plain text." As the Supreme Court recently explained in *Wolford v. Lopez*, 609 U.S.___, 2026 WL 1825723, at *6 (June 25, 2026), the textual question has three sub-parts: the regulation must 1) apply to "the people," 2) concern "Arms," and 3) restrict either the "keep[ing]" or the "bear[ing]" of arms. All three prerequisites are easily met here.

First, the restriction generally applies broadly to everyone in Maryland. There can be no doubt that it covers "the people."

Second, the Second Amendment's plain text covers "all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582. Summarizing its findings from founding-era sources, *Heller* explained that "the most natural reading of 'keep Arms' in the Second Amendment is to 'have weapons.' " *Id*. Glock and Glock-style pistols certainly constitute weapons. The Supreme Court in *Wolford* emphasized that " 'Arms' . . . refers to implements used for offense or defense" and furthermore, that handguns (like those banned by Maryland here) "fall squarely into this category." *Wolford*, 2026 WL 1825723, at *4.

Third, SB 334 restricts the "keep[ing]" or "bear[ing]" of arms. The Supreme Court has explained that "keeping" means "possession" and "bearing" means "carrying." *Id.* at *6 (quoting

*Bruen*, 597 U.S. at 32–33). If citizens cannot lawfully purchase a type of firearm, their right to "keep" such arms is necessarily infringed. And this Court, along with many of its sister circuits, has held that the Second Amendment encompasses the right to acquire firearms. *See McCoy v. ATF*, 140 F.4th 568, 575 (4th Cir. 2025) ("[T]he parties do not dispute that appellees' intended action—purchasing a handgun for lawful purposes—is part of the 'conduct' protected by the Amendment."); *see also Reese v. ATF*, 127 F.4th 583, 590 (5th Cir. 2025) ("[T]he right to 'keep and bear arms' surely implies the right to purchase them." (citation omitted)); *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, Nos. 24-2415, 24-2450 & 24-2506, 2026 WL 2075513 at *22 (3d Cir. July 17, 2026) (en banc) (recognizing that the Second Amendment right to possess arms implies a "corresponding right to obtain" the items necessary to exercise that right); *see also*, *e.g.*, *Ortega v. Grisham*, 148 F.4th 1134, 1143 (10th Cir. 2025); *United States v. Knipp*, 138 F.4th 429, 434 (6th Cir. 2025); *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 118 (9th Cir. 2024); *Gazzola v. Hochul*, 88 F.4th 186, 196 (2d Cir. 2023).

Thus, SB 334's ban implicates the Second Amendment and is presumptively unconstitutional unless Maryland can offer an adequate historical justification for it.

**C. The State cannot meet its burden of showing the ban is consistent with historical tradition, as Glock pistols are in "common use."**

Ordinarily, analyzing the historically recognized limits on the scope of the right involves reasoning by analogy to historical restrictions that the State may compile. Here, however, the relevant historical work has been done by the Supreme Court in *Heller*. *Heller* makes clear that historical tradition supports banning a firearm only if it is both "dangerous and unusual." 554 U.S. at 627 (citation omitted). Arms that are "in common use" are by definition neither dangerous nor unusual. *Id*. (citation omitted); *see also* Mark W. Smith, *What Part of "In Common Use" Don't You Understand?: How Courts Have Defied Heller In Arms-Ban-Cases—Again*, PER CURIAM HARV. J.L. & PUB. POL'Y (Sep. 27, 2023), https://perma.cc/N6LY-3EMQ. The Second Amendment thus

"protects the possession and use of weapons that are 'in common use at the time.'" *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 627). A law that bans the sale or purchase of a weapon in common use violates the Second Amendment.

*Heller* also held that handguns, specifically, are in common use and therefore cannot be banned. *See Heller*, 554 U.S. at 629 ("[H]andguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid"); *see also McCoy*, 140 F.4th at 575 ("[H]andguns … are 'the quintessential self-defense weapon.' " (quoting *Heller*, 554 U.S. at 629)). Indeed, four times the Supreme Court has reviewed government attempts to restrict handguns. The Court repeatedly has described handguns as "the quintessential self-defense weapon." *Heller*, 554 U.S. at 629; *McDonald*, 561 U.S. at 767–68 (quoting *Heller*, 554 U.S. at 629); *Bruen*, 597 U.S. at 47 (quoting *Heller*, 554 U.S. at 629). *Wolford*, also quoting *Heller*, described handguns as "overwhelmingly chosen by American society" for self-defense. *Wolford*, 2026 WL 1825723 at *4 (quoting *Heller*, 554 U.S. at 628). The Supreme Court has been clear: the Second Amendment protects the right to possess handguns. And there should be no exception for Glock and Glock-style pistols, one of the most popular handguns.

Glock and Glock-style handguns are simply ordinary semiautomatic handguns. "[T]he vast majority of [handguns] … are semi-automatic." *Heller v. District of Columbia*, 670 F.3d 1244, 1269 (D.C. Cir. 2011) (Kavanaugh, J., dissenting); *see Firearms Retailer: Survey Report*, NSSF, at 9 (2021), https://perma.cc/N59Q-6UJJ (over 80% of handguns sold in the United States in 2020 were semi-automatic pistols); *Firearm Production in the United States: With Firearm Import and Export Data*, NSSF, at 2 (2023), https://perma.cc/P6A8-DZK2 (over 80% of handguns produced in the United States between 1991 and 2021 were semiautomatic pistols). Glock and Glock-style pistols are therefore, as ordinary handguns, "in common use" and protected.

Even if this Court were to consider them apart from other semiautomatic handguns, which it should not, *see Ass'n of N.J. Rifle & Pistol Clubs*, 2026 WL 2075513 at *14 (concluding that all semi-automatic rifle "assault firearms" should be analyzed together because the State had not shown "that the Colt AR-15 is meaningfully different than any other banned semi-automatic rifle"), Glock and Glock-style pistols are "in common use" by any measure. Justices of the Supreme Court repeatedly have pointed to significant ownership for lawful purposes and broad legality as dispositive of the "common use" issue. *See Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring) ("The more relevant statistic is that hundreds of thousands of Tasers and stun guns have been sold to private citizens, who it appears may lawfully possess them in 45 States." (cleaned up and citation omitted)); *see also Snope v. Brown*, 145 S. Ct. 1534, 1534 (2025) (mem.) (statement of Kavanaugh, J. respecting denial of certioarari) ("Given that millions of Americans own AR-15s and that a significant majority of the States allow possession of those rifles, petitioners have a strong argument that AR-15s are in 'common use' by law-abiding citizens and therefore are protected by the Second Amendment under *Heller*."); *Friedman v. City of Highland Park*, 577 U.S. 1039 (2015) (mem.) (Thomas, J., dissenting from the denial of certiorari); *see also Staples v. United States*, 511 U.S. 600, 612 (1994) (recognizing that semiautomatic rifles "traditionally have been widely accepted as lawful possessions"); *cf. Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 297 (2025) ("AR-15 rifles, AK-47 rifles, and .50 caliber sniper rifles … are both widely legal and bought by many ordinary consumers."). Glock and Glock-style pistols easily satisfy both measures. They have long been legal across the country, —and still are—legal in the vast majority of states. Indeed, Maryland is one of just *four* states that have adopted restrictive laws like SB 334. *See* Frank Miniter, *The Truth About Bans on Glocks*, AM. RIFLEMAN (June 11, 2026), https://perma.cc/7CKV-A4SD. And they are among the most

popular handguns in the nation. *See How Glock Became America's Gun*, CBS NEWS (Sep. 15, 2013), https://perma.cc/J5E8-42UA. Analysts estimate that, as of 2020, Glock held nearly 65% of the U.S. market for handguns. *Gaston Glock & family*, FORBES (Apr. 5, 2021), https://perma.cc/6HWX-6FFP. The Fourth Circuit itself has referred to Glocks as paradigmatic common handguns. *See Bianchi v. Brown*, 111 F.4th 438, 455 (4th Cir. 2024) (en banc), *cert. denied sub nom.*, *Snope v. Brown*, 145 S. Ct. 1534 (2025) (referring to the Glock 19 as an exemplary "commonly used handgun"); *see also id.* at 527 (Richardson, J., dissenting) (calling the Glock 17 "the most popular handgun in the world"). The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") has recognized that Glocks are "popular for civilian use." *See* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652, 24655 (Apr. 26, 2022). And Glock pistols consistently rank among the top-selling firearms in the U.S. civilian market. *See, e.g.*, *Best-Selling Guns*, GUNS.COM (May 5, 2026), https://perma.cc/9JGJ-ZXXN (listing two Glock models in the top-five-selling handguns). Glock pistols also are widely used by law enforcement officers in the United States, *see* Kyle Clouse, *Is Glock Still the King of Semi-auto Pistols?*, LIBERTY SAFE (June 13, 2025), https://perma.cc/84HV-PTTZ ("[B]etween 40% and 65% of US law enforcement agencies … provide or specify Glock pistols for their officers."); *Glock History*, GLOCK, https://perma.cc/CLZ5-9ATE ("Over 65% of federal, state and local agencies in the United States have been issued GLOCK pistols."), including in Maryland, *see New Technology Initiatives*, BALT. POLICE DEP'T (Last Updated May 5, 2026), https://perma.cc/38AU-6V8V (noting that the Baltimore Police Department has issued Glock pistols to its officers). This is noteworthy because police officers on the beat carry firearms for defensive use, just like other citizens.

Government data confirms the popularity of Glock handguns. For example, in 2021, Glock manufactured 581,944 handguns in the United States. *See Annual Firearms Manufacturing and Export Report*, ATF, at 13 (2021), https://perma.cc/T6FB-YCAY. Of those, just 67,106 were exported. *Id*. at 153. Thus, in 2021 alone, Glock manufactured 514,838 handguns for sale in the United States. That is to say nothing of imports. In 2021, 5,263,341 handguns were imported into the United States. *See Firearms Commerce in the United States: Statistical Update 2024*, ATF, at 3 (2024), https://perma.cc/P689-LX24. Of those, 1,688,941 were imported from Austria, *id*. at 5, where many Glocks are manufactured, *see Glock Brand*, GLOCK, https://perma.cc/2UWY-EARR. This suggests that, in 2021 alone, Glock imported hundreds of thousands of handguns for sale in the United States.

The Fourth Circuit's decision in *Bianchi* does not command a different result. Rather, *Bianchi* confirms that Glock and Glock-style pistols are constitutionally protected. *Bianchi* upheld a ban on so-called "assault weapons," reasoning that even an arm "in common use" might be banned if they are "ill-suited and disproportionated to" the goal of self-defense. *See* 111 F.4th at 461. As Plaintiffs' discussion of common use above should make clear, Plaintiffs disagree that any arm in common use can be banned consistent with the Second Amendment. But even applying *Bianchi*'s carveout for "ill-suited and disproportionate" weapons here makes no difference. Indeed, when making its argument that weapons like the AR-15 fell "far outside the animating purposes of the Second amendment," the Fourth Circuit contrasted that arm with the handguns which the Supreme Court had already "establish[ed] … as the 'quintessential self-defense weapon ... for home defense.' " *Id.* at 458, 459 (quoting *Heller*, 554 U.S. at 629). For instance, the Fourth Circuit emphasized the appropriateness of handguns for self-defense when it posited that the AR-15 is not suited for that purpose, because "[o]utside the home, the AR-15 . . . is significantly less concealable

than a handgun and much more difficult to carry while conducting daily activities." *Id.* at 459. And even more directly on point, when the Fourth Circuit was reasoning that AR-15s are "excessively dangerous arms[,] . . . not reasonably related or proportional to the end of self-defense," the court distinguished those arms from "commonly used handgun[s] like the Glock 19." *Id.* at 450, 455. It is hard to understand how, given that the Fourth Circuit in *Bianchi* treated Glock pistols as paradigmatic arms that are both common, not "dangerous," and are "proportional to the end of self-defense," Maryland's ban on them could possibly withstand constitutional scrutiny.

Finally, the fact that semiautomatic Glocks can be converted, by use of an illegal "switch" device, to function in fully automatic mode, cannot justify banning law-abiding Marylanders from owning ordinary Glocks. Being convertible into an illegal arm is not and has never been a sufficient basis to restrict an arm in common use. *Heller*, for example, contrasted handguns with "weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." 554 U.S. at 625. But *any* shotgun can be converted with a hacksaw, in a matter of minutes, into a "short-barreled shotgun." That surely does not suggest that the government can ban shotguns which have been in undisputed common and lawful use since before the Founding. *See Shotgun*, BRITANNICA (June 19, 2026), https://perma.cc/AR2N-CXA8 (detailing the evolution of the modern shotgun from 16th and 17th century "fowling pieces"). Similarly, essentially any firearm can be configured to fire by a trap or spring, but historically only firearms that actually *are* configured that way have been proscribed. *See, e.g.*, 1884 Vt. Acts & Resolves 74, An Act Relating to Traps, § 1. And Glocks are not unique in their ability, among semiautomatic firearms, to be converted to function in automatic mode. Essentially all semiautomatics can be converted into machineguns. *Staples*, 511 U.S. at 615; *see Bondi v. VanDerStok*, 604 U.S. 458, 500 (2025) (Thomas, J., dissenting) ("[A]lthough an unmodified AR-15 is a semiautomatic weapon, every

single AR-15 can be converted to a machinegun using cheap, flimsy pieces of metal—including coathangers." (citation and quotation marks omitted)). But federal law has always recognized that the line to become a "machinegun" lies at *actual* automatic action, not potential conversion to automatic action. *See Staples*, 511 U.S. at 615 ("It is unthinkable to us that Congress intended to subject such law-abiding, well-intentioned citizens to a possible ten-year term of imprisonment if … what they genuinely and reasonably believed was a conventional semi-automatic [weapon] turns out to have been worn down into or been secretly modified to be a fully automatic weapon." (citation omitted)); *VanDerStok*, 604 U.S. at 483–84. And *Heller* refutes the notion that some people *misusing* a firearm can render it unprotected if Americans nevertheless choose it for lawful purposes. Justice Breyer pointed out in his dissent that "[h]andguns also appear to be a very popular weapon among criminals," 554 U.S. at 698, but that did not matter to the majority at all. That the American people had overwhelmingly chosen the handgun for lawful purposes was sufficient to establish protection. Plaintiffs are thus likely to succeed on the merits.

## III. DENIAL OF THIS CONSTITUTIONAL RIGHT CAUSES IRREPARABLE HARM.

"[D]eprivation of a constitutional right, 'for even minimal periods of time, unquestionably constitutes irreparable injury.' " *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987) ("The denial of a constitutional right, if denial is established, constitutes irreparable harm."). This principle applies with full force to the Second Amendment. The Supreme Court has held that the Second Amendment is not a "second-class right," subject to a lesser standard of protection than the other guarantees in the Bill of Rights. *McDonald*, 561 U.S. at 780.

This Court has reached the same conclusion when preliminary injunctions were sought for Second Amendment violations. *Kipke v. Moore* concluded that "in the context of an alleged

constitutional violation, the likelihood of irreparable harm necessarily depends on the likelihood of success on the merits of the claim." 695 F.Supp.3d 638, 662 (D. Md. 2023). The Court enjoined the enforcement of certain firearm regulations, which it deemed were likely violations of the Second Amendment. *Id*. The Ninth Circuit likewise concluded in the Second Amendment context: "in cases involving a constitutional claim, a likelihood of success on the merits usually establishes irreparable harm, . . . and strongly tips the balance of equities and public interest in favor of granting a preliminary injunction." *Baird v. Bonta*, 81 F.4th 1036, 1048 (9th Cir. 2023).

Here, Plaintiffs are unable to purchase and sell Glock pistols and hence exercise their Second Amendment protected rights. Each day the prohibition remains in effect, Plaintiffs are denied the ability to acquire the firearm they identified for self-defense: "the core lawful purpose" of the Second Amendment. *Heller*, 554 U.S. at 630.

Furthermore, Atlantic Guns faces significant economic harm from the destructive effect of SB 334 preventing it from selling some of the most popular firearms it currently trades in. "Because the government is protected by sovereign immunity and no monetary damages are available, these severe economic losses can qualify as irreparable harm." *Ass'n of Cmty. Cancer Ctrs. v. Azar*, 509 F. Supp. 3d 482, 500 (D. Md. 2020). Plaintiffs therefore satisfy the irreparable harm requirement.

## IV. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH TOWARDS A PRELIMINARY INJUNCTION.

The last two factors, the balance of equities and the public interest, merge when the Government is opposing a preliminary injunction. *See Miranda*, 34 F.4th at 365. And when states try to enforce unconstitutional laws, as Maryland is attempting with SB 334, this merged inquiry weighs towards a preliminary injunction: "it is well-established that the public interest favors protecting constitutional rights." *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021). And a state "is 'in no way harmed by issuance of a preliminary injunction

which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction.' " *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) (quoting *Giovani Carandola, Ltd. v. Bason*, 147 F.Supp.2d 383, 395 (M.D.N.C. 2001)). These principles apply with full force here.

Finally, although an injunction bond is mandatory under Rule 65(c), "the court has discretion 'to set the bond amount in such sums as it deems proper,' including a nominal amount, or waiver of the requirement by imposing a nominal bond amount of zero." *D.N.N. v. Liggins*, 822 F. Supp. 3d 543, 598 (D. Md. 2026) (quoting *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999)) "And this court has frequently waived imposition of bond by imposing a nominal amount of zero dollars where fundamental constitutional rights are at stake." *Id.* (cleaned up). It should do so here.

**CONCLUSION**

For the foregoing reasons, this Court should grant a preliminary injunction, enjoining the enforcement of SB 334.

Dated: July 20, 2026

Respectfully submitted,

/s/ *Nicole J. Moss*
Nicole J. Moss, Bar No. 20222
*Attorney of Record*
David H. Thompson*
Peter A. Patterson*
William V. Bergstrom*
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 220-9600
(202) 220-9601
nmoss@cooperkirk.com

*Admitted pro hac vice

*Attorneys for Plaintiffs*